**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **LEDCOMM LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil Action No. 6:22-cv-00302-ADA** |
| **IKEA US RETAIL LLC &** | ) | |
| **IKEA NORTH AMERICA SERVICES, LLC** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THE IKEA DEFENDANTS' OPPOSITION TO LEDCOMM LLC'S
<u>MOTION TO DISMISS WITHOUT PREJUDICE</u>**

**Table of Contents**

I.      Introduction ............................................................................................................... 1

II.     Statement of Facts ...................................................................................................... 2

        A.      The Parties Year-Long Litigation History ..................................................... 2

        B.      Settlement Discussions ................................................................................... 9

III.    Legal Standard .......................................................................................................... 14

IV.     Argument .................................................................................................................. 16

        A.      Any Dismissal should be with Prejudice ....................................................... 16

                1.      Dismissal with Prejudice is Appropriate Because LedComm Seeks
                        to Avoid an Adverse Judgment ........................................................... 16

                2.      Dismissal with Prejudice is Appropriate Based on the Parties'
                        Substantial Litigation .......................................................................... 17

                3.      Dismissal with Prejudice is Appropriate Because IKEA may be
                        Stripped of Defenses ............................................................................ 17

                4.      LedComm fails to Justify a Dismissal Without Prejudice ..................... 18

        B.      Alternatively, LedComm's Dismissal Should be Conditioned on
                LedComm Paying IKEA's Attorneys' Fees and Costs .................................... 19

        C.      LedComm's Attacks are Inconsistent with the Facts ..................................... 20

V.      Conclusion ................................................................................................................ 20

## Table of Authorities

**Cases**

*3M v. Barr Labs.*, Inc.,
   289 F.3d 775 (Fed. Cir. 2002) ............................................................................ 15, 16

*Brain Life, LLC v. Elekta Inc.,*
   746 F.3d 1045 (Fed. Cir. 2014) .................................................................................. 10

*Colisem Square Ass'n v. Jackson*,
   465 F.3d 215 (5th Cir. 2006) ...................................................................................... 15

*Elbaor v. Tripath Imaging, Inc.,*
   279 F.3d 314 (5th Cir. 2002) ................................................................................ 14, 15

*Ikospentakis v. Thalassic Steamship Agency*,
   915 F.2d 176 (5th Cir. 1990) ...................................................................................... 15

*Keurig, Inc. v. Sturm Foods, Inc.,* 732 F.3d 1370 (Fed. Cir. 2013) ................................. 5

*Kranz v. Midland Credit Mgmt., Inc.,*
   No. SA-18-cv-169-XR, 2020 U.S. Dist. LEXIS 81995 (W.D. Tex. May 8, 2020) ........... 15, 16

*Lester v. Exxon Mobil Corp.*,
   383 F. Supp. 3d 618 (E.D. La. 2019) ................................................................... 15, 17

*Mortgage Guaranty Insurance Corp. v. Richard Carlyon Co.,*
   904 F.2d 298 (5th Cir. 1990) ...................................................................................... 15

*Peals v. Quicktrip Corp.*,
   No. 4:20-cv-022, 2021 U.S. Dist. LEXIS 17883 (E.D. Tex. Jan. 29, 2021) ............................ 17

*Radiant Tech. Corp. v. Electrovert USA Corp.*,
   122 F.R.D. 201 (N.D. Tex. 1988) ................................................................................ 15

*Ritchey v. Ledoux*,
   164 F.R.D. 186 (E.D. La. 1995) ................................................................................. 15

*Roor Int'l BV v. Smoke Shop, LLC*,
   No. 4:18-cv-00735-KPJ, 2020 U.S. Dist. LEXIS 244775 (E.D. Tex. Dec. 30, 2020) ........ 15, 16

*Welsh v. Correct Care L.L.C.*,
   915 F.3d 341 (5th Cir. 2019) ...................................................................................... 15

**Statutes**

35 U.S.C. § 285.................................................................................................................. 3

**Rules**

Fed. R. Civ. P. 33.............................................................................................................. 4
Fed. R. Civ. P. 34.............................................................................................................. 4
Fed. R. Civ. P. 41................................................................................................. 1, 14, 15
Fed. R. Civ. P. 30.............................................................................................................. 6

## I.      Introduction

Defendants IKEA US Retail LLC and IKEA North America Services, LLC (collectively, "IKEA") oppose Plaintiff LedComm LLC's ("LedComm") Motion to Voluntarily Dismiss without Prejudice under Federal Rule of Civil Procedure 41(a)(2)[1] for lacking the proper "terms."[2]  As IKEA has answered, the Court may dismiss this action at LedComm's request under Rule 41(a)(2) "on terms that the court considers proper."  IKEA requests that the "terms" be that LedComm's dismissal is either conditioned on being with prejudice or, alternatively, without prejudice and LedComm paying IKEA's attorney fees and costs.  LedComm should be afforded a reasonable time (*e.g.*, thirty days) to accept the conditions.

The dismissal should be with prejudice because LedComm is seeking to avoid an adverse judgment and a dismissal with prejudice fairly balances the parties' interests.  LedComm seeks to avoid a judgment of noninfringement based on IKEA's suppliers being licensed, IKEA's products being found not to infringe, and LedComm's asserted claims being found invalid.  Without any justification, LedComm has refused to produce its patent licenses, thereby avoiding a finding of noninfringement based on LedComm's patent rights being exhausted.  Further, after completing final infringement contentions, LedComm admittedly failed to conduct the requisite testing to show infringement for most asserted claims.  Moreover, the only record is that the asserted patent claims are invalid, as LedComm chose not to provide any validity contentions.  Based on this record, a dismissal with prejudice fairly concludes the litigation over the current products.  Further, a dismissal with prejudice also permits LedComm to assert its patents against future IKEA

---

[1]  D.I. 037
[2]  This opposition is supported by the Attorney Declaration of Aakash K. Patel ("Patel Dec.") and the Exhibits attached thereto.  IKEA also attaches two alternative proposed orders.

products that do not have a licensed component and do not fall within the claim preclusion standard, which is the claim that LedComm seems interested in preserving.

LedComm, however, unfairly seeks a dismissal without prejudice.  A dismissal without prejudice permits LedComm or an assignee of any of the seven asserted patents to reassert one or more of the same patents against IKEA alleging infringement of the same accused products. Further, a dismissal without prejudice causes legal prejudice to IKEA because: (i) LedComm seeks to evade an adverse judgment based on patent license/exhaustion, noninfringement, and invalidity; (ii) IKEA has expended significant expense in defending itself through claim construction, preparing invalidity contentions against thirty-two asserted claims, and addressing LedComm's infringement contentions; and (iii) IKEA may be stripped of noninfringement defenses due to the age of the products and the passage of time.  But to the extent that the Court considers a dismissal without prejudice appropriate, LedComm's dismissal should be conditioned on LedComm paying IKEA's reasonable fees and costs.

## II.    Statement of Facts

LedComm's factual recitation selectively cites a few emails and omits almost the entire record.  IKEA presents the litigation record.

### A.    The Parties Year-Long Litigation History

LedComm's original Complaint, which was filed over a year ago, and Amended Complaint alleged that IKEA infringed thirty-two claims across seven patents.[3]  IKEA answered.[4]  The accused products are thirteen IKEA branded light bulbs having light emitting diode ("LED") components and other unnamed "substantially similar products."[5]  The seven asserted patents

---

[3]  D.I. 001; D.I. 010.  *See also* Patel Dec., Ex. A at p. 3.
[4]  D.I. 021.
[5]  D.I. 010 at ¶ 2.

relate to either the LED "packaging" or internal LED structures.  In its answer, IKEA asserted, *inter alia*, noninfringement, invalidity based on specifically identified prior art references, and a request that it be awarded its attorney fees and costs under 35 U.S.C. § 285.[6]

Pursuant to OGP 4.1, the parties' agreed to Scheduling Order provided:

(i)     LedComm's Preliminary Infringement Contentions were due on June 14, 2022;

(ii)    IKEA's Preliminary Invalidity Contentions were due on September 7, 2022;

(iii)   Discovery opened on January 4, 2023; and

(iv)    Final Infringement and Invalidity Contentions were due on February 28, 2023.[7]

LedComm timely served its preliminary infringement contentions.  On June 16, 2022, IKEA notified LedComm of significant deficiencies in LedComm's contentions.[8]  For example, claim 1 of U.S. Patent No. 6,982,522 requires "a plurality of phosphor layers each of which is excited to emit a different wavelength of light from each other."[9]  Claim 3 of U.S. Patent No. 6,803,606 ("'606 patent") requires an epoxy resin "glass-transition temperature" to be "40 C. or more and 100 C. or less."[10] Claim 4 of the '606 patent requires a gold wire "breaking strength" to be "100mN or more at normal temperature."[11]  But LedComm's preliminary infringement contentions lacked any testing to show that: different wavelengths of light were emitted from different phosphor layers, the claimed "glass transition temperature," or the claimed "breaking strength."[12]  In fact, most of LedComm's preliminary infringement contentions relied on "information belief," not

---

[6]  D.I. 021 at p. 20-25.
[7]  D.I. 024-1, pp. 1-3.
[8]  Patel Dec., Ex. B.
[9]  Patel Dec., Ex. C at 8:41-43.
[10]  Patel Dec, Ex. D at 6:33-35.
[11]  *Id.* at 6:36-39.
[12]  Patel Dec., Ex. E at '606 patent contentions at pp. 18-19; '522 patent contentions at pp. 6-7.

facts.[13]   These deficiencies implicated twenty-five of the thirty-two patent claims asserted by LedComm.[14]

In response, LedComm served Amended Preliminary Infringement Contentions.[15]   But rather than dismissing the case, withdrawing patents and/or patent claims, or providing infringement proofs, LedComm promised to "supplement with additional information in the final preliminary contentions" for twenty of its thirty-two asserted claims.[16]   As LedComm lacked *prima facia* infringement proofs, it was apparent that LedComm had not conducted the required analysis to assert these claims.

LedComm did not seek to voluntarily dismiss the case in July 2022.   Thus, IKEA was forced to defend itself and proceeded — at significant expense — to timely serve its initial invalidity contentions for each of the thirty-two asserted claims on September 7, 2022.[17]   Between August and December 2022, IKEA underwent the expense of claim construction briefing for the seven asserted patents, including expert costs.[18]

When fact discovery opened, IKEA served Rule 33 interrogatories and Rule 34 requests for documents on January 4, 2023.[19]   Among the documents IKEA requested were LedComm's licenses.[20]   IKEA Interrogatory No. 9 asked LedComm to, *inter alia*, identify "Plaintiff's

---

[13]   *See*, *e.g.*, *id.* '606 patent contentions at pp. 18-22; '522 patent contentions at pp. 7-8; '277 patent contentions at p. 20; '125 patent contentions at p. 8; '190 patent contentions at pp. 15; '176 patent contentions at pp. 19-20, 25; '959 patent contentions at p. 13.

[14]   *See* Patel Dec., Ex. B.

[15]   Patel Dec., Ex. F.

[16]   Patel Dec, Ex. F '606 patent contentions at pp. 18-24; '522 patent contentions at pp. 7-8; '277 patent contentions at p. 21; '190 patent contentions at pp. 15-17; '176 patent contentions at pp. 20, 26; '959 patent contentions at p. 13.

[17]   *See* Patel Dec., Ex. G.

[18]   *See generally* D.I. 027; D.I. 027-2 at JA-1048-JA-1195; D.I. 030.

[19]   Patel Dec., Exs. H; I.

[20]   Patel Dec., Ex. G at p. 6.

licenses."[21]  IKEA was particularly interested in LedComm producing its licenses because IKEA does not manufacture the accused IKEA light bulbs or the LEDs.  Rather, IKEA contracts to have light bulbs manufactured from third parties and has approved LED suppliers that these third parties can purchase LED components from on a product-by-product basis.  Certain of IKEA's approved LED suppliers informed IKEA that they had licenses to the asserted LedComm patents, but they were not permitted to provide the licenses to IKEA.  As patent exhaustion (*e.g.*, due to a license) is an affirmative defense,[22] IKEA needed LedComm to produce its licenses, so that IKEA could establish its license/patent exhaustion defense.

IKEA's interrogatories also asked LedComm: (i) whether LedComm contended the asserted claims were valid in view of IKEA's invalidity contentions and, if so, why; and (ii) to explain any testing/analysis of the IKEA accused products that relates to LedComm's infringement contentions.[23]

LedComm responded to IKEA's discovery with boiler-plate objections on February 3, 2023.[24]  LedComm did not sign its responses to IKEA's document requests.[25]  LedComm admitted that it had relevant documents.[26]  But LedComm did not produce a single responsive document.  Nor did LedComm answer any interrogatory.[27]  Without any justification, LedComm refused to produce its licenses and refused to answer the license interrogatory.[28]  Further, LedComm did not

---

[21]  Patel Dec., Ex. I at p. 5.
[22]  *Keurig, Inc. v. Sturm Foods, Inc.,* 732 F.3d 1370, 1373 (Fed. Cir. 2013).
[23]  Patel Dec., Ex. I at p. 3.
[24]  Patel Dec., Exs. J; K.
[25]  Patel Dec., Ex. J at p. 21.
[26]   *See* Patel Dec., Ex. J (stating Plaintiff that is withholding responsive documents based on the above objections in response to RFP's Nos. 1, 2-22).
[27]  *See generally* Patel Dec., Ex. K.
[28]  *See* Patel Dec., Ex. J at pp. 4-5; Ex. K at pp. 12-13.

contend that its patent claims were valid nor did it answer the interrogatory directed to infringement testing/analysis.[29]

Starting on February 10, 2023, IKEA asked LedComm to answer IKEA's discovery, particularly producing its licenses, because LedComm had no basis for withholding such relevant documents.[30]   IKEA asked for a meet and confer.[31]   But LedComm opted not to meet and confer and not to discuss its discovery obligations through written communications.[32]

LedComm meanwhile chose not to serve any discovery.  Rather, on February 3, 2023 LedComm informally requested via email "a 30b6 deposition of IKEA."[33]   IKEA repeatedly asked LedComm to serve a Rule 30(b)(6) deposition notice, so that IKEA would know what corporate entity or entities among IKEA's many entities (including the two named defendants) LedComm sought to depose.[34]   Moreover, as a party is normally limited to one deposition of an entity, IKEA wanted a clear record that LedComm had identified all of its deposition topics, so that the IKEA entity being deposed would not be subject to multiple corporate depositions including overlapping topics.  Further, as IKEA has a legal obligation to prepare a witness for a Rule 30(b)(6) deposition, IKEA requested that LedComm comply with the Federal Rules to prevent any misunderstandings, legal issues, or ambiguities.   For example, LedComm's email identified the topic as "LED suppliers to IKEA over the prior 6 years."   That informal topic is facially overbroad.   LedComm identified only thirteen accused IKEA light bulbs from the many IKEA LED light bulbs and other LED products IKEA has sold over the past six years.  LedComm had no basis for a topic that was

---

[29]  Patel Dec., Ex. K at pp. 4-7.
[30]  *See* Patel Dec., Ex. L. at pp. 4-6.
[31]  *Id.* at pp. 1, 4, 5.
[32]  *See Id.* at p. 5.
[33]  D.I. 037, Ex. 16.
[34]  *See* Patel Dec., Ex. L at p. 4; Ex. M at p. 1 (IKEA's request that LedComm serve a formal 30(b)(6) deposition notice is discussed at point 5).

broader than the accused products.  If LedComm truly wanted to proceed with a topic that broad and was permitted to do so, it would be complex to find and prepare witnesses on all such products. Ignoring the Federal Rules of Civil Procedure and IKEA's requests, LedComm refused to serve a notice and repeatedly emailed with the same request.[35]

However, in an attempt to avoid a costly and unduly burdensome deposition on a single topic, IKEA offered to answer an interrogatory regarding its supply chain. An interrogatory response was clearly the most expedient discovery tool to produce the information.  For example, IKEA stated: "IKEA has stated many times it is willing to answer an interrogatory and will do so on a *shortened* time frame."[36]  LedComm did not respond to IKEA's offer and did not serve any interrogatories.

The parties scheduled a conference on February 24, 2023 to discuss discovery issues and settlement.  Just prior to the meet and confer, LedComm agreed that a corporate deposition was "overkill."[37]  IKEA again offered to answer an interrogatory during the meet and confer on February 24, 2023, but LedComm never served an interrogatory.[38]

The parties' final invalidity and infringement contentions were due on February 28, 2023.[39] IKEA reminded LedComm on February 16, 2023 of its promise to cure the deficiencies in its Initial Infringement Contentions.[40]  IKEA timely served final invalidity contentions on February 28,

---

[35] *See* D.I. 037, Ex. 16 at p. 1; Ex. 17 at p. 1.
[36] Patel Dec., Ex. M at p. 1 (emphasis added).
[37] Patel Dec., Ex. P at p. 4.
[38] *Id.* at p. 2.
[39] D.I. 024-1, pp. 1-3.
[40] Patel Dec., Ex. Q.

2023.[41]  LedComm opted to rely on its initial infringement contentions and chose not to serve final infringement contentions.[42]

On March 1, 2023, after IKEA had undergone the expense of its final invalidity contentions, LedComm proposed an "Unopposed Motion to Stay all Deadlines and Notice of Settlement" in which LedComm inappropriately stated that "[a]ll matters in controversy . . . have been settled, in principle."[43]  But as there was no agreement in principle, LedComm's counsel stated that he would be speaking with his client later that day regarding IKEA's settlement offer discussed at the February 24, 2023 meet and confer.[44]  IKEA responded, stating that the motion was "not accurate," and that "we can assess LedComm's proposed stay and motion after we hear from you about whether LedComm agrees to IKEA's settlement proposal."[45]

LedComm never responded to IKEA's settlement offer nor did it follow-up regarding the proposed motion to stay and its inaccuracies.  Therefore, IKEA made one last attempt to resolve the discovery issues and obtain the licenses on March 3, 2022.[46]  IKEA also asked whether LedComm had "any update on IKEA's settlement proposal that dismisses the case and prevents IKEA from being sued again on the same patents and products."[47]  LedComm ignored IKEA's request and asked for additional comments on LedComm's proposed motion to stay.[48]  IKEA responded by noting its appreciation of the parties settlement discussion, but reminded LedComm that no agreement had been reached, and therefore the proposed motion was not appropriate.[49]

---

[41]  *See* Patel Dec., Ex. R.
[42]  *See* Patel Dec., Ex. S.
[43]  Patel Dec., Ex. N.
[44]  Patel Dec., Ex. U at pp. 1-2.
[45]  *Id.* at p. 1.
[46]  Patel Dec., Ex. V at p. 1.
[47]  *Id.*
[48]  *Id.* at pp. 1-2.
[49]  *Id.* at p. 1.

IKEA further reminded LedComm that settlement discussions are not a legitimate reason for LedComm not to engage in discovery.[50]  IKEA noted that while IKEA had made itself available to discuss LedComm's concerns, LedComm had failed to make itself available to discuss its discovery deficiencies for over a month.[51]

On March 3, 2022, IKEA also notified LedComm that IKEA would be seeking to strike LedComm's deficient infringement contentions because LedComm failed to "supplement with additional information in the final preliminary contentions" and LedComm has presented no basis for asserting many of its claims.  IKEA requested a time to meet and confer on the issue.[52]

On March 6, 2023, after over a month of IKEA's good-faith attempts to resolve the discovery issues and obtain the licenses, IKEA emailed the Court's law clerks summarizing the discovery issues involving LedComm's withholding of its licenses and refusing to respond to discovery.[53]  On March 8, 2023, LedComm filed a Motion to Stay[54] and a Motion for Voluntary Dismissal.[55]  After IKEA notified the Court that it did not oppose LedComm's motion to stay, the Court stayed the case on March 9, 2023.[56]

**B.    Settlement Discussions**

IKEA provides a complete record of the parties' settlement discussions because LedComm's motion focuses on a limited record of the settlement discussions, as opposed the litigation record.

---

[50]  *Id.*
[51]  *Id.*
[52]  Patel Dec., Ex. S.
[53]  Patel Dec., Ex. T.
[54]  D.I. 038
[55]  D.I. 037.
[56]  Text Order Granting Motion to Stay (D.I. 038) entered March 9, 2023.

Late in December 2022, certain IKEA LED suppliers informed IKEA that they had a license to the asserted LedComm patents.  On December 28, 2022, IKEA notified LedComm that IKEA's LED suppliers for the accused products had indicated that they were licensed.  IKEA requested that LedComm agree to dismiss the case *with* prejudice because LedComm's patent rights had been exhausted.[57]  LedComm responded shortly thereafter, requesting that IKEA identify its suppliers for the accused products.[58]  IKEA promptly responded to LedComm's request within the hour on December 28, 2022.[59]  IKEA later received an email on December 28, 2022, from an apparent LedComm third-party business consult, rejecting IKEA's offer to dismiss the case with prejudice because LedComm wanted the option to sue IKEA later for future products.[60]  But this reasoning made no sense because a dismissal with prejudice would not prevent a future suit on new products that were outside the scope of claim preclusion.[61]

On January 5, 2023, LedComm further responding by stating that "the suppliers that you have identified are not all licensed," but did not identify which of IKEA's suppliers were allegedly not licensed and which were licensed.[62]  Thus, as of January 5, 2023, the settlement record was that LedComm disputed whether IKEA's suppliers were licensed and had rejected IKEA's proposal for a dismissal with prejudice.

Later in January, LedComm sent unexplained emails asking if IKEA would provide a "representation that IKEA does not have any LED suppliers other than [those] identified."[63]  IKEA

---

[57] D.I. 037, Ex. 1.
[58] D.I. 037, Ex. 3.
[59] *Id.*  The identification of IKEA's suppliers for a particular product are sensitive confidential - attorneys' eyes only information for competitive business reasons.
[60] D.I. 037, Ex. 2.
[61] *Brain Life, LLC v. Elekta Inc.,* 746 F.3d 1045, 1054 (Fed. Cir. 2014) (holding that claim preclusion did not apply to products that post-dated the final judgment).
[62] Patel Dec., Ex. W.
[63] D.I. 037, Ex. 7.

was confused by LedComm demanding a representation regarding products other than the accused products, providing no explanation or context for the demand, and failing to address the dispute over whether IKEA suppliers were licensed.  Thus, IKEA responded on January 24, 2023 stating: "IKEA is confused over your prior statement regarding LedComm's licenses: 'I can say that the suppliers that you have identified are not all licensed'" and it would "be more fruitful to visit the issue after LedComm produces its licenses in response to IKEA's document request next week."[64] Thus, as LedComm had rejected IKEA's settlement offer and disputed who was licensed, IKEA made clear that it wanted to have the licenses before having further settlement discussions.

Ignoring IKEA's settlement position and the dispute regarding which IKEA suppliers were licensed, LedComm sent an unsolicited declaration on February 1, 2023 asking IKEA to execute the declaration and reoffering a "dismissal without prejudice."[65]  The requested declaration named only one IKEA defendant – IKEA North America Services, LLC[66] – an entity not involved with selling the accused products nor with the supply chain.  Further, the proposed declaration listed six companies and used the undefined terms "affiliates" and "surface mounted device chips."[67] Moreover, the proposed declaration provided no explanation of why these companies were listed and provided no statement about whether the listed companies were licensed.  LedComm's communications were confusing because they ignored IKEA's statement that it wanted the licenses before having further discussions, provided no explanation for the demand, did not address the dispute over which companies were licensed, and offered a dismissal without prejudice, which IKEA had made clear was unacceptable.  Therefore, IKEA maintained its position that it wanted

---

[64] D.I. 037, Ex. 10 at p. 1.
[65] D.I. 037, Ex. 13.
[66] D.I. 037, Ex. 14.
[67] D.I. 037, Ex. 14.

the licenses before engaging in further discussions, which were due to be produced on February 4, 2022.[68]  IKEA, however, undertook to further investigate its supply chain in view of the requested declaration.

Given LedComm's refusal to produce its licenses or otherwise respond to any of IKEA's discovery requests on February 3, 2023, IKEA sent letters on February 10, 2023 and February 13, 2023 proposing times to discuss LedComm's settlement proposal and its unexplained declaration.[69]  On February 20, 2023, after almost two months of refusing to address the licensing dispute, LedComm ambiguously stated: "from what you have represented, it would *appear* IKEA is presently covered by recent licenses" and again offered a dismissal without prejudice.[70]  IKEA responded by reiterating that a dismissal without prejudice was not appropriate for licensed products.  IKEA asked for LedComm's position and reiterated its request for a meet and confer on the settlement and discovery issues.[71]  When LedComm did not respond, IKEA proposed times to meet on February 22, 2003, and the parties conferred on February 24, 2023.[72]  IKEA sent an agenda for the call that included clearing up the confusion about what entities were licensed.  Agenda item 1 read "What entities has LedComm licensed?"[73]

At the conference, LedComm stated that the suppliers IKEA had originally identified in December were licensed.  IKEA explained that it had further investigated its supply chain in response to the declaration request but could not execute the requested declaration because some accused products were older and had an additional approved supplier.  Based on the investigation,

---

[68] D.I. 037, Ex. 10.
[69] Patel Dec., Ex. X.
[70] Patel Dec., Ex. P at p. 10.
[71] *Id.* at p. 9.
[72] *Id.* at p. 8.
[73] *Id.* at p. 5.

however, the alleged use of the additional supplier was believed to be *de minimis*. LedComm stated that it would investigate whether the potential additional supplier was licensed.

The parties fundamentally disagreed on settlement terms. Because LedComm was insisting on a dismissal without prejudice, IKEA proposed a royalty-free paid up license for the current and past IKEA products and those that are substantially similar. IKEA's proposal also provided LedComm with the ability to bring suit on new IKEA products that differed substantially from the accused products (*e.g.,* future products outside the scope of claim preclusion that do not have licensed LED components).[74] LedComm rejected that balanced approach insisting that IKEA provide a declaration and a dismissal without prejudice that would permit LedComm, or an assignee to any of the seven asserted patents, a "do-over" at their whim (*e.g.*, potentially seven do-overs). The parties adjourned the conference disagreeing on settlement, but with an agreement to continue discussions after LedComm had determined whether the potential additional supplier was licensed.[75]

LedComm's motion incorrectly states that "counsel for Plaintiff" requested a "statement" about suppliers and volumes.[76] While the parties discussed the potential for a statement as part of a settlement agreement -- in addition to statements from LedComm about what products were licensed --no such "statement" was requested, as evidenced by the lack of a citation to the record. Certainly, LedComm never served any discovery asking for this information. Rather, after the conference the ball was in LedComm's court to first determine whether the potential additional supplier was licensed and to respond to IKEA's balanced settlement proposal.

---

[74] *See* Patel Dec., Ex. P at p. 5 (discussed at agenda item 2).
[75] *Id.* at p. 2.
[76] D.I. 037, p. 4.

Rather than addressing any of the outstanding settlement issues, LedComm sent its proposed motion to stay on March 3, 2023, stating that there was an agreement in principle, even though there had never been any such agreement.[77]  Confirming that the ball was in LedComm's court on settlement, LedComm's counsel stated that he would be speaking with his client later that day regarding the proposed motion to stay and IKEA settlement offer.[78]  IKEA responded, stating that it "can assess LedComm's proposed stay and motion after we hear from you about whether LedComm agrees to IKEA's settlement proposal."[79]  LedComm did not provide an update after the conference or respond to IKEA's settlement proposal.  Instead, on March 8, 2023, LedComm filed its Motion for Voluntary Dismissal.[80]

## III.   Legal Standard

Fed. R. Civ. P. 41(a)(2) provides that, except as permitted by Rule 41(a)(1), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Dismissals under FED. R. CIV. P. 41(a)(2) "should be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit."[81]  The Fifth Circuit has explained that a defendant may suffer plain, legal prejudice from a plaintiff's voluntary dismissal if any of the following factors are present:

> (1) the plaintiff seeks dismissal after an adverse ruling or to circumvent an expected adverse result;
>
> (2) the case has proceeded far in the litigation; or

---

[77]  *See* Patel Dec., Ex. P at p. 1.
[78]  *Id.* at pp. 1-2.
[79]  *Id.* at p. 1.
[80]  D.I. 037.
[81]  *Elbaor v. Tripath Imaging, Inc.,* 279 F.3d 314, 320 (5th Cir. 2002).

(3) dismissal would strip the defendant of an otherwise available defense.[82]

The primary purpose of Rule 41(a)(2) is to prevent a voluntarily dismissal without prejudice from being unfair to the nonmoving party.[83]  Therefore, the Court has discretion in its decision of whether and how to dismiss an action under Rule 41(a)(2).[84]  For example, courts may "grant the dismissal on the condition that it be with prejudice."[85]  Alternatively, court's often condition a dismissal without prejudice on the plaintiff accepting to pay the defendant's attorneys' fees and costs.[86]  Where a court imposes such conditions, the court must allow the plaintiff the opportunity to retract the motion rather than accept these conditions.[87]

---

[82]  *Lester v. Exxon Mobil Corp.*, 383 F. Supp. 3d 618, 626 (E.D. La. 2019) (citing *Ikospentakis v. Thalassic Steamship Agency*, 915 F.2d 176, 177 (5th Cir. 1990).

[83]  *Radiant Tech. Corp. v. Electrovert USA Corp.*, 122 F.R.D. 201, 203 (N.D. Tex. 1988) (explaining that it is the defendant's interests that should be protected).

[84]  *Id. at* 202; *see also Elbaor*, 279 F.3d at 319-320 (holding that a dismissal with prejudice condition was overbroad as to some claims and district court should either fashion conditions that prevent relitigating only the claims that a defense applied to or deny the motion to voluntarily dismiss).

[85]  *Kranz v. Midland Credit Mgmt., Inc.,* No. SA-18-cv-169-XR, 2020 U.S. Dist. LEXIS 81995, at *11 (W.D. Tex. May 8, 2020) (conditioning the grant of plaintiff's motion for voluntarily dismissal on the plaintiff accepting a dismissal with prejudice); *Roor Int'l BV v. Smoke Shop, LLC*, No. 4:18-cv-00735-KPJ, 2020 U.S. Dist. LEXIS 244775, at *17-*18 (E.D. Tex. Dec. 30, 2020) (conditioning dismissal as with prejudice rather than conditioning the dismissal on payment of fees)*; see also 3M v. Barr Labs.*, Inc., 289 F.3d 775, 784 (Fed. Cir. 2002) (affirming dismissal with prejudice under Eight Circuit law where plaintiff sought to evade an adverse noninfringement judgment).

[86]  *Coliseum Square Ass'n v. Jackson*, 465 F.3d 215, 249-250 (5th Cir. 2006) (affirming conditioning the grant of Rule 41(a)(2) motion upon plaintiff paying defendant's reasonable attorney fees and costs);  *Ritchey v. Ledoux*, 164 F.R.D. 186, 189-191 (E.D. La. 1995) (conditionally granting  plaintiff's voluntary dismissal motion upon plaintiff paying defendant's reasonable attorney fees and costs) (citing *Mortgage Guaranty Insurance Corp. v. Richard Carlyon Co.,* 904 F.2d 298, 300 (5th Cir. 1990); *Radiant Tech.*, 122 F.R.D. at *12 (granting motion to dismiss on the condition that plaintiff pay defendant's fees and costs that cannot be reused).

[87]  *Welsh v. Correct Care L.L.C.*, 915 F.3d 341, 344 (5th Cir. 2019).

**IV.      Argument**

Based on the Fifth Circuit factors, IKEA suffers plain legal prejudice.  Therefore, the Court should offer LedComm a grant of its voluntary dismissal motion conditioned on either the dismissal being with prejudice or LedComm paying IKEA's attorneys' fees and costs.

**A.      Any Dismissal should be with Prejudice**

LedComm's motion should be conditioned on accepting a dismissal with prejudice because IKEA is legally prejudiced by: (1) LedComm attempting to avoid an adverse judgement; (2) this case has proceeded past claim construction, final infringement, and final invalidity contentions; (3) a dismissal without prejudice has the potential of stripping IKEA of its noninfringement and license/exhaustion defenses; and (4) LedComm fails to justify why it seeks to voluntarily dismiss this case after over a year of litigation.

**1.      Dismissal with Prejudice is Appropriate Because LedComm Seeks to Avoid an Adverse Judgment**

LedComm improperly seeks to avoid an adverse judgement of noninfringement and invalidity.[88]  LedComm improperly withheld its licenses, which prevented IKEA from establishing its license/patent exhaustion defense.  Further, despite the fact that it should have analyzed IKEA's products for infringement before filing the case and having about a year to produce its infringement proofs, LedComm failed to produce a basis for asserting at least twenty of its thirty-two asserted claims.  Moreover, LedComm did not answer an interrogatory directed towards invalidity, so the

---

[88] *Kranz v. Midland Credit Mgmt., Inc.,* No. SA-18-cv-169-XR, 2020 U.S. Dist. LEXIS 81995, at *9-*10 (conditioning the grant of voluntary dismissal motion on plaintiff accepting with prejudice where plaintiff sought to evade Federal Court standing requirements); *Roor Int'l BV, LLC,* No. 18-v-00735, 2020 U.S. Dist. LEXIS 244775, at *17-*18 (holding that voluntary dismissal was conditioned on being with prejudice); *see also Ikospentakis*, 915 F.2d at 180 (reversing grant of motion for  voluntarily dismissal where plaintiff sought to avoid a defense); *3M v. Barr Labs.*, Inc., 289 F.3d 775, 784 (Fed. Cir. 2002) (noting that "a dismissal without prejudice might well have constituted an abuse of discretion since 3M was plainly seeking to avoid an adverse judgment" under Eight Circuit law).

only record is that LedComm has no rebuttal to IKEA's contentions establishing a *prima facie* showing of invalidity for all asserted claims.  Thus, the record shows that LedComm seeks to avoid adverse rulings by moving for a voluntarily dismissal.[89]

### 2. Dismissal with Prejudice is Appropriate Based on the Parties' Substantial Litigation

A dismissal with prejudice is appropriate because the case has been litigated for over a year and the positions have been crystallized.  The parties conducted claim construction briefing, and the Court issued a claims construction order.[90]  Further, claim construction, final infringement contentions, and final invalidity contentions have all been completed.[91]  Likewise, the license/exhaustion dispute would be ripe for determination if LedComm would produce its licenses.  Although summary judgment motions have not been filed and the case is not set for trial, the litigation has advanced sufficiently far to show that the case is meritless and LedComm is evading IKEA moving for summary judgment.[92]

### 3. Dismissal with Prejudice is Appropriate Because IKEA may be Stripped of Defenses

IKEA is further legally prejudiced by the potential of being stripped of defenses due to the lapse of time.  For example, seven of the thirteen named accused products are no longer listed for sale on IKEA's United States website.[93]  As LedComm's infringement contentions show, the LED components inside the accused products need to be analyzed in order to assess infringement.  Thus,

---

[89] *See* § II.A *supra.*
[90] D.I. 27, 29-35.
[91] D.I. 026, pp. 1-3; D.I. 027; D.I. 029; D.I. 030; D.I. 031; D.I. 032; D.I. 036; Patel Dec., Ex. R.
[92] *See Lester*, 383 F. Supp. 3d at 628 (denying plaintiff's voluntary dismissal motion where the parties had invested substantial time and effort); *Peals v. Quicktrip Corp.*, No. 4:20-cv-022, 2021 U.S. Dist. LEXIS 17883, at *24-*25 (E.D. Tex. Jan. 29, 2021) (denying plaintiff's motion for voluntary dismissal without prejudice where the parties had exerted substantial effort and a motion for summary judgment was pending).
[93] Patel Dec., ¶ 27.

the scarcity of the accused products for testing at a later date may prejudice IKEA's ability to show that the products lack claimed features. Further, IKEA's supply chain involves multiple foreign third-party vendors. Thus, IKEA is potentially prejudiced from proving a license defense years later because it may, in some instances, need information from its current foreign supply chain including the current light bulb manufacturers and/or the LED component manufacturers to establish a license defense for a particular product at a particular time when the product was being manufactured. The passage of time could create difficulties in obtaining third-party information that relates to the supply chain.

### 4. LedComm fails to Justify a Dismissal Without Prejudice

LedComm's lone justification for a dismissal without prejudice is IKEA allegedly "refusing to verify its LED suppliers."[94] But LedComm's argument fails for three reasons. First, IKEA cannot be considered to have refused to "verify its suppliers" because LedComm never served any discovery on IKEA. Second, IKEA never refused to "verify its suppliers." Rather, IKEA offered on multiple occasions to verify its suppliers. IKEA asked LedComm to serve an interrogatory and even offered to answer on a shortened time frame.[95] Further, IKEA discussed providing a corporate witness to testify on this subject matter, if LedComm would serve a proper deposition notice.[96] Thus, IKEA did not refuse to verify its suppliers, but instead offered to do just that, in the proper manner as described in the Federal Rules of Civil Procedure.

Secondly, LedComm incorrectly implies that IKEA had some unidentified obligation to execute LedComm's unsolicited declaration. But IKEA has no obligation to execute an unsolicited declaration, particularly one with ambiguities and that provides no context or explanation about

---

[94] D.I. 37 at p. 4.
[95] *See*, *e.g.* Patel Dec., Ex. M at p. 1; Ex. P at p. 2.
[96] Patel Dec., Ex. P at 6; Ex. V at p. 6.

LedComm's licensees.  Nor does IKEA have a timeline by which it must complete its investigation of whether it can or should execute LedComm's unsolicited declaration.

Third, a dismissal without prejudice does not serve LedComm's justification of preserving its ability to later litigate if IKEA's representations were "false."  Rather, a dismissal without prejudice allows LedComm, or another entity that acquires any of the seven asserted patents, to file another patent infringement suit irrespective of the veracity of any representation.  If LedComm is concerned with the veracity of any representations, it should have conducted discovery, not put it off for another day.  Moreover, LedComm's threat of litigating the current supply chain at a later date potentially prejudices IKEA because its ability to verify or obtain information from its current supply chain may be impacted in the future.

### B.   Alternatively, LedComm's Dismissal Should be Conditioned on LedComm Paying IKEA's Attorneys' Fees and Costs

Alternatively, LedComm's dismissal should be conditioned on LedComm paying IKEA's fees and costs.  After a year of litigation, LedComm failed to produce a basis for asserting at least twenty of the thirty-two asserted claims.[97]  Because LedComm never withdrew any asserted claim, LedComm forced IKEA, at significant expense, to put forth an invalidity defense for all thirty-two claims.[98]  Moreover, IKEA was prevented from establishing its patent license/exhaustion defense because LedComm's withheld its patent licenses and did not answering interrogatories regarding patent licenses.  Additionally, the only litigation record is that the patent claims are invalid because LedComm chose not to contest invalidity in its interrogatory answers.  If the Court opts to condition a dismissal on payment of fees and costs, IKEA will submit the amounts for court review.

---

[97]  *See* Patel Dec., Ex. B; Ex. F at pp. 20-24; 31-32; 53; 76; 78; 104; 117.
[98]  *Coliseum Square Ass'n*, 465 F.3d at 249-250 (5th Cir. 2006) (affirming a conditional grant of Rule 41(a)(2) motion upon plaintiff paying defendant's reasonable attorney fees and costs where Plaintiff had no legal basis for bringing suit);

### C.     LedComm's Attacks are Inconsistent with the Facts

Although LedComm's assertions that IKEA did not properly engage in settlement discussions are not germane to LedComm's motion for voluntary dismissal, IKEA briefly responds to prevent any misunderstandings.  After LedComm rejected IKEA's December 28, 2022 proposal and disputed who was licensed in late December/early January, IKEA made clear that a dismissal without prejudice was unacceptable and that IKEA wanted LedComm's discovery responses regarding licenses before discussing the issues further.[99]  LedComm, however, refused to address the license dispute – which was pivotal to settlement discussions – from December 28, 2022 until February 24, 2023.[100]  To this day, LedComm has never provided a record representation or evidence of the licenses.

Finally, LedComm suggests that IKEA refused to work with LedComm.  That is not correct.  IKEA resolved LedComm's demands, made itself available to discuss LedComm's issues, and even offered to respond to discovery on a shortened timeline if LedComm would serve discovery.[101]  In contrast, LedComm refused to discuss LedComm's discovery responses and never met and conferred on its discovery deficiencies.[102]

## V.     Conclusion

For these reasons, IKEA respectfully requests that the Court order that LedComm can accept a voluntary dismissal with prejudice or in the alternative accept paying IKEA's attorneys' fees and costs.

DATED:  March 29, 2023                          Respectfully submitted,

                                                */s/ Michael J. Bonella*
                                                Michael J. Bonella (admitted *pro hac vice*)

---

[99]  *E.g.,* D.I. 037, Ex. 10 at p. 1; Patel Dec., Ex. M at pp. 1, 3, 5.
[100]  *See generally* Patel Dec., Exs. M; P.
[101]  *Id.*
[102]  *Id.*

Joseph R. Klinicki (admitted *pro hac vice*)
Aakash K. Patel (admitted *pro hac vice*)
**FLASTER GREENBERG P.C.**
1717 Arch St., Suite 3300
Philadelphia, PA 19103
Telephone: (215) 279-9393

Mark D. Siegmund
**CHERRY JOHNSON SIEGMUND JAMES, PLLC**
400 Austin Ave., 9th Floor
Waco, Texas 76701
Telephone: (254) 732-2248

*Counsel for Defendants IKEA US Retail LLC
and IKEA North America Services, LLC*

**CERTIFICATE OF SERVICE**

I, Michael J. Bonella, hereby certify that The IKEA Defendants' Opposition to LedComm's Motion for Voluntary Dismissal Without Prejudice, Declaration of Aakash K. Patel and exhibits, proposed orders, and accompanying documents were served on all counsel of record via the Court's electronic filing system on March 29, 2023.

*/s/ Michael J. Bonella*
Michael J. Bonella